IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HAMMOND MURPHY and BLAIR DOUGLASS, <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES TYRWHITT, INC., <br><br> Defendant. | Civil Action No. 1:20-cv-00056 |

## <u>SETTLEMENT AGREEMENT</u>

Table of Contents

1.  Introduction ................................................................................................ 1

2.  Definitions .................................................................................................. 2

3.  Conditions Precedent ................................................................................. 5

4.  Charles Tyrwhitt Shall Make Its Digital Properties Accessible .............. 5

5.  Third-Party Content ................................................................................... 6

6.  Accessibility Coordinator .......................................................................... 6

7.  Accessibility Consultant and Status Report .............................................. 7

8.  Accessibility Audit ..................................................................................... 7

9.  Accessibility Strategy ................................................................................ 8

10. Accessibility Policy Statement .................................................................. 8

11. Accessibility Training ................................................................................ 9

12. Modified Bug Fix Priority Policies ........................................................... 10

13. Customer Service Personnel ...................................................................... 10

14. Quarterly Accessibility Audit .................................................................... 10

15. Quarterly End-User Accessibility Testing ................................................ 11

16. Agreement Term ......................................................................................... 11

17. Monitoring and Compliance ...................................................................... 11

18. Scope of Agreement ................................................................................... 12

19. Incentive Award to Named Plaintiffs ........................................................ 12

20. Annual Report and Meet-and-Confers ...................................................... 13

21. Dispute Resolution Procedure ................................................................... 13

22. Attorneys' Fees and Costs up to the Date of Final Approval .................... 14

23. Attorneys' Fees and Costs after Final Approval ....................................... 15

24. Preliminary Approval, Objections, And Fairness Hearing ....................... 17

25.    Notice ............................................................................................................ 17

26.    Judgment, Final Approval, And Dismissal ................................................... 18

27.    No Admissions Of Liability ......................................................................... 18

28.    Terms Not Confidential; Non-Disparagement .............................................. 18

29.    Releases ........................................................................................................ 19

30.    Entire Agreement .......................................................................................... 19

31.    Modification .................................................................................................. 19

32.    Severability ................................................................................................... 19

33.    Drafting of this Agreement ........................................................................... 19

34.    Execution In Counterparts ............................................................................ 19

35.    Continuing Jurisdiction ................................................................................. 20

36.    Deadlines ...................................................................................................... 20

37.    Communications to Named Plaintiffs, Class Counsel, the Settlement Class, and Charles Tyrwhitt .................................................................................... 20

<u>Settlement Agreement</u>

1. **Introduction** This Agreement (all capitalized terms have the meanings set forth in Section 2) is entered into by and between Charles Tyrwhitt and Named Plaintiffs, individually and on behalf of the Settlement Class.

   1.1. Charles Tyrwhitt owns, operates, and controls the Website, which is open to consumers in the United States through the internet.

   1.2. This Agreement applies to the Website, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps, but not Subsequently Abandoned Websites and Mobile Apps.

   1.3. Named Plaintiffs use screen reader auxiliary aids to access digital information and are persons with a disability as that term is used in the ADA. Named Plaintiffs have attempted to patronize the Website and intend to do so again in the future.

   1.4. On or about March 18, 2020, Plaintiff Anthony Hammond Murphy filed this Lawsuit, in which Plaintiff Murphy asserted that Charles Tyrwhitt does not have, and has never had, adequate corporate policies and practices that are reasonably calculated to cause the Website to be fully accessible to blind or visually disabled individuals, in violation of the ADA.

   1.5. On July 20, 2020, Named Plaintiffs filed an Amended Class Action Complaint in the Lawsuit, reasserting claims of disability discrimination on behalf of a class of similarly situated persons.

   1.6. The Parties now wish to affect a complete resolution and settlement of all claims, disputes and controversies relating to the allegations of Named Plaintiffs and the Settlement Class, and to resolve their differences and disputes by settling the Lawsuit.

   1.7. The terms of all exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the exhibits, the terms of the Agreement shall control.

   1.8. This Agreement and all exhibits are binding on Charles Tyrwhitt's subsidiaries, successors and assigns.

2.    **Definitions.**

2.1.    **"Accessible" or "Accessibility"** refers to digital content that meets the success criteria of the WCAG 2.1.

2.2.    **"Accessibility Audit"** means the initial audit of the Website required by Section 8 of this Agreement.

2.3.    **"Accessibility Coordinator"** means the person designated by Charles Tyrwhitt to serve the purposes of Section 6 of this Agreement.

2.4.    **"Accessibility Consultant"** means the person designated by Charles Tyrwhitt to serve the purposes of Section 7 of this Agreement.

2.5.    **"Accessibility Policy Statement"** means the statement required by Section 10 of this Agreement that must demonstrate Charles Tyrwhitt's commitment to implementing accessible services to blind and visually disabled individuals.

2.6.    **"Accessibility Strategy"** means the corrective action strategy required by Section 9 of this Agreement.

2.7.    **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations.

2.8.    **"Agreement"** means this agreement and the exhibits attached hereto.

2.9.    **"Agreement Term"** means the time from the Effective Date through the end of three (3) years from the Effective Date.

2.10.    **"Charles Tyrwhitt"** means Charles Tyrwhitt, Inc.

2.11.    **"Charles Tyrwhitt Parties"** means Charles Tyrwhitt and its present and former parents and subsidiaries and each of their respective present, former or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors and assigns.

2.12.    **"Charles Tyrwhitt Personnel"** means all persons who are employed by Charles Tyrwhitt and who have managerial responsibility for the design and development of the Website, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.13.    **"Charles Tyrwhitt Settlement Contact"** means a Charles Tyrwhitt employee designated as the initial point of contact for Class Counsel and Named Plaintiffs with respect to issues concerning this Agreement. Charles Tyrwhitt shall notify

Class Counsel and Named Plaintiffs in writing of the person designated as the Charles Tyrwhitt Settlement Contact within ten (10) days of the Effective Date. Charles Tyrwhitt shall also notify Class Counsel and Named Plaintiffs in writing should a new individual be designated as the Charles Tyrwhitt Settlement Contact during the Agreement Term. Such notice shall be required within ten (10) days of designation of the any new Charles Tyrwhitt Settlement Contact.

2.14.   **"Class Counsel"** means Kevin W. Tucker and Kevin Abramowicz of East End Trial Group LLC, and Lawrence H. Fisher of Lawrence H. Fisher Attorney at Law.

2.15.   **"Costs"** means all out-of-pocket expenses reasonably incurred and shall include (but be not limited to) amounts payable to experts.

2.16.   **"Court"** means United States District Court for the Western District of Pennsylvania.

2.17.   **"CSO Personnel"** means the individuals required by Section 13 of this Agreement.

2.18.   **"Digital Properties"** means the Website, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.19.   **"Dispute Resolution Procedure"** means the process described in Section 21 hereof.

2.20.   **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.21.   **"Final Approval"** means approval given in a written order to this Agreement by a United States District Court Judge or Magistrate of competent jurisdiction after notice to the Settlement Class and Hearing.

2.22.   **"First Extended Agreement Term"** means the time from the Agreement Term through the end of four (4) years from the Effective Date.

2.23.   **"Injunctive Releasing Parties"** means Named Plaintiffs and all Settlement Class Members, and each of their executors, successors, heirs, assigns, administrators, agents and representatives.

2.24.   **"Lawsuit"** means *Anthony Hammond Murphy et al. v. Charles Tyrwhitt, Inc.*, Case No. 1:20-cv-00056-SPB-RAL (W.D. Pa.).

2.25.   **"Modified Bug Fix Priority Policies"** refer to the policies required by Section 12 of this Agreement.

2.26. **"Named Plaintiffs"** means Anthony Hammond Murphy and Blair Douglass.

2.27. **"New Websites and Mobile Apps"** means any website or mobile application that Charles Tyrwhitt develops, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement

2.28. **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.29. **"Party"** refers to Charles Tyrwhitt, Named Plaintiffs, or the Settlement Class.

2.30. **"Parties"** refers to Charles Tyrwhitt, Named Plaintiffs, and the Settlement Class.

2.31. **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided in accordance with this Agreement.

2.32. **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory or code provisions that either (a) directly incorporates the ADA or (b) sets forth standards or obligations coterminous with or equivalent to the ADA. The "Released Injunctive Claims" cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

2.33. **"Second Extended Agreement Term"** means the time from the First Extended Agreement Term through the end of five (5) years from the Effective Date.

2.34. **"Settlement Class"** or **"Settlement Class Members"** means all blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Website from the United States.

2.35. **"Status Report"** means a written evaluation that (a) identifies content, features, and services on the Digital Properties that are not fully and equally accessible to individuals who use screen reader auxiliary aids, and (b) recommends steps Charles Tyrwhitt must take to ensure their remediation.

2.36.  **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties, that Charles Tyrwhitt ceases to operate or make available to consumers in the United States after the Effective Date of this Agreement.

2.37.  **"Subsequently Acquired Websites and Mobile Apps"** means any website or mobile application that Charles Tyrwhitt acquires from a third party, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement.

2.38.  **"WCAG 2.1"** means Web Content Accessibility Guidelines 2.1, including the WAI-ARIA, and/or the BBC Mobile Accessibility Standards and Guidelines currently available at:

   http://www.bbc.co.uk/guidelines/futuremedia/accessibility/mobile_access.shtml.

2.39.  **"Website"** means the digital property located at https://www.ctshirts.com/us.

**3.**  **Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events:

3.1.  The Court grants Preliminary Approval of this Agreement, and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2.  Notice is provided to the Settlement Class in accordance with Section 25 of this Agreement.

3.3.  The Court grants Final Approval of this Agreement and enters Judgment in accordance with the terms set forth herein after a fairness hearing has been conducted, and all such orders and approvals have become final and non-appealable.

**4.**  **Charles Tyrwhitt Shall Make Its Digital Properties Accessible**. Charles Tyrwhitt shall ensure blind or visually disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties as provided for in this Section:

4.1.  Within thirty-six (36) months of the Effective Date, or by the end of the Agreement Term, Charles Tyrwhitt shall ensure the U.S. portion of the Website is Accessible.

4.2.  Charles Tyrwhitt shall ensure the U.S. portion of any New Websites and Mobile Apps are Accessible at the time of their release.

4.3.    Charles Tyrwhitt shall ensure the U.S. portion of Subsequently Acquired Websites and Mobile Apps are Accessible within twelve (12) months of their acquisition.

**5.    Third-Party Content.**

5.1.    Charles Tyrwhitt shall not be required to ensure advertisements provided by third parties not owned, controlled, or operated by Charles Tyrwhitt are Accessible, unless those advertisements provide a function that is necessary to ensure blind and visually disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties.

5.2.    After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, Charles Tyrwhitt shall seek a commitment from the vendor to provide content in a format that conforms to WCAG 2.1 or can be made to conform by Charles Tyrwhitt to WCAG 2.1. If during this contracting process Charles Tyrwhitt issues a request for proposal for development or inclusion of Third-Party Content on the Digital Properties, then Charles Tyrwhitt shall include conformance with WCAG 2.1 as a criterion. For Third-Party Content that is not subject to a written contract, Charles Tyrwhitt shall seek out such content that conforms to WCAG 2.1, which may include discussions with vendors to provide content in a format that conforms to WCAG 2.1 or can be made to conform by Charles Tyrwhitt to WCAG 2.1.

5.3.    If, after following the process set forth in this Section, Charles Tyrwhitt is unable to obtain Third-Party Content that conforms to WCAG 2.1, it shall demonstrate through its reporting to the Class Counsel and Named Plaintiffs, under Section 20, that obtaining or providing conforming Third-Party Content would fundamentally alter the nature of its goods and services or would result in an undue burden.

**6.    Accessibility Coordinator.**

6.1.    Within three (3) months of the Effective Date of this Agreement, Charles Tyrwhitt shall designate an employee as the Accessibility Coordinator, approved by Named Plaintiffs and Class Counsel, for the Digital Properties.

6.2.    The Accessibility Coordinator shall report directly to a Charles Tyrwhitt's Chief Technology Officer, who shall have knowledge of the requirements of digital accessibility, the ADA, and WCAG 2.1, and shall be responsible for coordinating Charles Tyrwhitt's compliance with Sections 4 through 15 of this Agreement.

6.3.    Charles Tyrwhitt must seek and obtain approval of Class Counsel and Named Plaintiffs prior to appointing a new individual as Accessibility Coordinator during the Agreement Term.

**7.     Accessibility Consultant and Status Report.**

7.1.    Within six (6) months of the Effective Date of this Agreement, Charles Tyrwhitt shall retain an Accessibility Consultant, approved by Named Plaintiffs and Class Counsel, who is knowledgeable about digital accessibility, the ADA, and WCAG 2.1.

7.2.    The Accessibility Consultant's duties shall include: (a) assisting Charles Tyrwhitt to conduct an Accessibility Audit of the Website; (b) advising Charles Tyrwhitt on how to make the Website Accessible; (c) verifying that the Website is Accessible by the end of the Agreement Term; (d) ensuring any New Websites and Mobile Apps, and any Subsequently Acquired Websites and Mobile Apps, are Accessible; and (e) ensuring any Third Party Content that may be required to be Accessible is Accessible.

7.3.    On each anniversary date of the Effective Date of this Agreement, the Accessibility Consultant shall provide Charles Tyrwhitt, Class Counsel, and Named Plaintiffs with a Status Report. In the Status Report, the Accessibility Consultant shall (a) identify content, features, and services on the Digital Properties that are not fully and equally accessible to individuals who use screen reader auxiliary aids, and (b) recommend steps Charles Tyrwhitt must take to ensure their remediation.

7.4.    Charles Tyrwhitt must seek and obtain approval of Named Plaintiffs and Class Counsel prior to appointing a new individual as Accessibility Consultant during the Agreement Term.

**8.     Accessibility Audit.**

8.1.    Within nine (9) months of the Effective Date of this Agreement, Charles Tyrwhitt shall complete the Accessibility Audit.

8.2.    The Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations.

8.3.    Within twelve (12) months of the Effective Date of this Agreement, Charles Tyrwhitt shall provide a copy of the Accessibility Audit to Class Counsel and Named Plaintiffs.

9.    **Accessibility Strategy.**

9.1.   Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall develop and implement an Accessibility Strategy designed to ensure the Website is Accessible by the Agreement Term.

9.2.   Charles Tyrwhitt shall incorporate this Agreement, the Accessibility Audit, the Accessibility Policy Statement, and the recommendations and Status Reports of the Accessibility Consultant into the Accessibility Strategy.

9.3.   Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall provide a copy of the Accessibility Strategy to Class Counsel and Named Plaintiffs.

9.4.   Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall disseminate the Accessibility Strategy among Charles Tyrwhitt Personnel.

9.5.   Charles Tyrwhitt shall revise the Accessibility Strategy within three (3) months of receiving the Accessibility Consultant's Status Report in order to implement any recommendations the Status Report includes.

10.    **Accessibility Policy Statement.**

10.1.   Within nine (9) months of the Effective Date of this Agreement, Charles Tyrwhitt shall develop the Accessibility Policy Statement.

10.2.   The Accessibility Policy Statement shall at minimum, (a) state that Charles Tyrwhitt is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website, and that may be provided by and through any New Websites and Mobile Apps or Subsequently Acquired Websites and Mobile Apps; (b) solicit feedback from visitors to Charles Tyrwhitt's Digital Properties on how the accessibility of these properties can be improved; and (c) include an accessible means of submitting accessibility questions and problems, including a toll-free telephone number, an accessible form, and an email address to contact the Accessibility Coordinator about the Accessibility Policy Statement and the Digital Properties.

10.3.   Within nine (9) months of the Effective Date of this Agreement, Charles Tyrwhitt shall provide a copy of the Accessibility Policy Statement to Class Counsel and Named Plaintiffs.

10.4.   Within twelve (12) months of the Effective Date of this Agreement, Charles Tyrwhitt shall post the Accessibility Policy Statement on the following website: https://www.ctshirts.com/us/accessibility-policy/.

10.5.   Within twelve (12) months of the Effective Date of this Agreement, Charles Tyrwhitt shall add invisible anchor text in the header of Website's homepage which reads, "Click to view our Accessibility Policy Statement." The anchor text shall redirect consumers to https://www.ctshirts.com/us/accessibility-policy/.

10.6.   Charles Tyrwhitt shall include invisible anchor text in the header of the homepage of any New Websites and Mobile Apps at the time of their release, which text reads, "Click to view our Accessibility Policy Statement." The anchor text shall redirect consumers to https://www.ctshirts.com/us/accessibility-policy/.

10.7.   Within three (3) months of their acquisition, Charles Tyrwhitt shall add invisible anchor text in the header of the homepage of any Subsequently Acquired Websites and Mobiles Apps, which text reads, "Click to view our Accessibility Policy Statement." The anchor text shall redirect consumers to https://www.ctshirts.com/us/accessibility-policy/.

## 11.   Accessibility Training.

11.1.   Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall train all employees responsible for website and mobile application design, development, and maintenance to ensure future design, development, and maintenance of the Digital Properties to ensure the Digital Properties are and remain Accessible.

11.2.   To the extent Charles Tyrwhitt has already provided training to all current employees responsible for website and mobile application design, development, and maintenance, then Charles Tyrwhitt shall provide refresher training to those employees within eighteen (18) months of the Effective Date of this Agreement.

11.3.   Charles Tyrwhitt shall provide accessibility training to all newly-hired employees within 90-days of their hire date.

11.4.   Charles Tyrwhitt shall provide refresher accessibility training on an annual basis commencing in 2022.

11.5.   During the Agreement Term, Charles Tyrwhitt shall provide copies of all accessibility training material to Class Counsel and Named Plaintiffs.

12.      **Modified Bug Fix Priority Policies.**

12.1.    Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create accessibility barriers, including those that create nonconformance with WCAG 2.1 to the Website.

12.2.    The Modified Bug Fix Priority Policies shall ensure that any bugs that create accessibility barriers to the Digital Properties are remedied with the same level of priority (*e.g.*, speed, resources used to remediate) as any other equivalent loss of function for individuals without disabilities.

12.3.    Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall provide the Modified Bug Fix Priority Policies to Class Counsel and Named Plaintiffs.

13.      **Customer Service Personnel**.

13.1.    Within eighteen (18) months of the Effective Date of this Agreement, Charles Tyrwhitt shall designate and train no fewer than two CSO Personnel to automatically escalate calls from blind or visually disabled individuals who encounter difficulties using the Digital Properties, and to timely assist such users within CSO published hours of operation.

13.2.    The CSO Personnel must be designated to automatically escalate electronic or written form communications from blind or visually disabled individuals who encounter difficulties using the Digital Properties, and to timely assist such users within CSO published hours of operation.

13.3.    Should any complaint or issue that concerns or relates to compliance with the terms of this Agreement be made to a CSO Personnel, said complaint or issue shall be forwarded to the Accessibility Coordinator, who then shall forward the complaint or issue to Class Counsel and Named Plaintiffs. To the extent any such claim or issue is not resolved, it shall be subject to the Dispute Resolution Procedure.

14.      **Quarterly Accessibility Audit.**

14.1.    During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, Charles Tyrwhitt, or a consultant retained on its behalf, shall perform an automated accessibility audit on a quarterly basis to evaluate whether the Digital Properties are Accessible.

14.2.   During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, Charles Tyrwhitt shall provide copies of all accessibility audits to Class Counsel and Named Plaintiffs.

**15.     Quarterly End-User Accessibility Testing.**

15.1.   During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, the Accessibility Consultant shall perform end-user accessibility/usability testing, with said testing to be performed by blind or visually disabled individuals, or who have training and experience in the manner in which blind or visually disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

15.2.   During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, Charles Tyrwhitt shall provide copies of all end-user test results to Class Counsel and Named Plaintiffs.

**16.     Agreement Term.** The Agreement Term shall be three (3) years from the Effective Date except as follows:

16.1.   If Charles Tyrwhitt fails to demonstrate, or if either the Accessibility Consultant or Accessibility Coordinator determines, the Website is not Accessible, or if applicable, any New Websites and Mobile Apps or any Subsequently Acquired Websites and Mobile Apps are not Accessible, by the Agreement Term, then the term of the Agreement shall extend to the First Extended Agreement Term.

16.2.   If Charles Tyrwhitt fails to demonstrate, or either the Accessibility Consultant or Accessibility Coordinator determines, that the Website is not Accessible, is not Accessible, or if applicable, any New Websites and Mobile Apps or any Subsequently Acquired Websites and Mobile Apps are not Accessible, by the First Extended Agreement Term, then the term of the Agreement shall extend to the Second Extended Agreement Term.

**17.     Monitoring of Compliance.** Class Counsel and Named Plaintiffs shall monitor Charles Tyrwhitt's compliance with Sections 4 through 15 as more fully described in this paragraph.

17.1.   Class Counsel and Named Plaintiffs shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating compliance with Sections 4 through 15.

17.2.    Charles Tyrwhitt shall provide copies of the accessibility related questions and comments generated by the toll-free telephone number, accessible form, and email address at   https://www.ctshirts.com/us/accessibility-policy/, or generated or received in any other manner or through any other medium, to Class Counsel and Named Plaintiffs on a quarterly basis.

18.    **Scope of Agreement.**

18.1.    The provisions of this Agreement shall apply to Charles Tyrwhitt's policies, practices, and procedures with respect to blind or visually disabled individuals within the United States who use screen reader auxiliary aids to access the Digital Properties. The data that Charles Tyrwhitt periodically reports to Class Counsel and Named Plaintiffs pursuant to this Agreement shall contain relevant information for these consumers.

18.2.    The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

18.3.    Named Plaintiffs expressly agree that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by Charles Tyrwhitt with respect to the claims alleged by Named Plaintiffs in this case.

19.    **Incentive Award to Named Plaintiffs.**

19.1.    Subject to Court approval, Charles Tyrwhitt shall pay each of the Named Plaintiffs an incentive award in the amount of One Thousand Dollars and Zero Cents ($1,000.00).

19.2.    Named Plaintiffs waive any right to an incentive award in connection with this matter which exceeds the amount provided in Section 19.1.

19.3.    Charles Tyrwhitt shall pay the amount provided in Section 19.1, or Two Thousand Dollars and Zero Cents ($2,000.00), within fourteen (14) days of the Effective Date by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

19.4.    The Incentive Award shall not be subject to withholding deductions and Charles Tyrwhitt may issue an IRS Form 1099 to Named Plaintiffs, through Class Counsel at the address provided for notice below, for their respective amounts.

20.    **Annual Report and Meet-and-Confers.**

20.1.    During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, on the Effective Date's anniversary date, Charles Tyrwhitt shall submit a report to Class Counsel and Named Plaintiffs, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

20.2.    At Class Counsel's written request, Class Counsel and Charles Tyrwhitt or its counsel will meet to discuss the Annual Report and review the implementation of this Agreement. Such meetings may be either in person or by telephone, as the Parties agree.

21.    **Dispute Resolution Procedure.** The Parties shall address disputes relating to any of the provisions of this Agreement as follows.

21.1.    Informal Dispute Resolution.

21.1.1.    If either Party believes that a dispute exists relating to any Section of this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

21.1.2.    If a Settlement Class Member believes a dispute exists relating to any Section of this Agreement, she may notify Class Counsel who, in turn, shall notify Charles Tyrwhitt in writing, describing the dispute. Charles Tyrwhitt shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

21.1.3.    Further, if Charles Tyrwhitt is informed of a dispute relating to the provisions of this Agreement by a Settlement Class Member, it shall notify Class Counsel and Named Plaintiffs in writing, describing the dispute and providing the Settlement Class Member's contact information, if known. Charles Tyrwhitt shall respond to the dispute in writing within fifteen (15) business days of receipt of the notice. The response shall be directed to Class Counsel and Named Plaintiffs.

21.1.4.    Within fifteen (15) business days of receipt of the response described in Section 21.1.1, 21.1.2, or 21.1.3, counsel for both

Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally. The Parties may agree to enter mediation on the issue in dispute.

21.1.5.     Charles Tyrwhitt shall be responsible for all reasonable attorneys' fees and Costs incurred by Class Counsel and Named Plaintiffs in pursuing informal dispute resolution of a nonfrivolous claim pursuant to this Section 21.1.

21.2.     Submission to Mediation.

21.2.1.     In the event that the Parties are unable to resolve their dispute through such meet-and-confer negotiations, then within forty-five (45) days of receipt of the letter raising the dispute, the dispute shall be submitted to mediation before a mutually-agreed upon mediator in Pittsburgh, Pennsylvania. Charles Tyrwhitt shall pay the cost of the mediation. If Charles Tyrwhitt declines to pay such costs, Named Plaintiffs may submit the dispute to the Court.

21.3.     Submission to the Court.

21.3.1.     If the meet-and-confer process and mediation pursuant to Sections 21.1 and 21.2 above do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by Judge Susan Paradise Baxter or any other United States District Judge who may be assigned to the case.

21.3.2.     In the event either Party finds that it is necessary to seek resolution of the dispute by the Court, the Court shall award reasonable attorneys' fees and costs incurred in pursuing dispute resolution as set forth in this Section 21.2 of the Agreement in accordance with the prevailing party standards under the ADA.

## 22.     Attorneys' Fees and Costs up to the Date of Final Approval.

22.1.     Subject to Court approval, Charles Tyrwhitt shall pay Named Plaintiffs' reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement by the Court in the amount of Twenty-Eight Thousand Dollars and Zero Cents ($28,000.00).

22.2.    Named Plaintiffs waive any right to reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement which exceed the amount provided in Section 22.1.

22.3.    Charles Tyrwhitt shall pay the amount provided in Section 22.1 in two equal installments of Fourteen Thousand Dollars and Zero Cents ($14,000.00), with the first installment to be paid within fifteen (15) business days of the Effective Date and the second installment to be paid within three (3) months of the Effective Date. Charles Tyrwhitt shall make each installment payment by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

23.    **Attorneys' Fees and Costs after Final Approval.**

23.1.    Final Approval through the Agreement Term

23.1.1.    Charles Tyrwhitt shall pay reasonable attorneys' fees and Costs incurred by Named Plaintiffs after Final Approval and during the Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

23.1.2.    Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure, Named Plaintiffs waive any right to reasonable attorneys' fees and Costs for work performed by Class Counsel after Final Approval and during the Agreement Term which exceed the amount provided in Section 23.1.1.

23.1.3.    Charles Tyrwhitt shall pay the amount provided in Section 23.1.1 within six (6) months of Final Approval by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

23.2.    First Extended Agreement Term

23.2.1.    If the Agreement Term is extended to four years from the

Effective Date, then Charles Tyrwhitt shall pay additional reasonable attorneys' fees and Costs incurred by Named Plaintiffs during the First Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

23.2.2.    Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure, Named Plaintiffs waive any right to reasonable attorneys' fees and Costs for work performed by Class Counsel during the First Extended Agreement Term which exceed the amount provided in Section 23.2.1.

23.2.3.    Charles Tyrwhitt shall pay the amount provided in Section 23.2.1 within three (3) months of the start of the First Extended Agreement Term by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

23.3.    Second Extended Agreement Term

23.3.1.    If the Agreement Term is extended to five years from the Effective Date, then Charles Tyrwhitt shall pay additional reasonable attorneys' fees and Costs incurred by Named Plaintiffs during the Second Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

23.3.2.    Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure, Named Plaintiffs waive any right to reasonable attorneys' fees and Costs for work performed by Class Counsel during the Second Extended Agreement Term which exceed the amount provided in Section 23.3.1.

23.3.3.    Charles Tyrwhitt shall pay the amount provided in Section 23.3.1 within three (3) months of the start of the Second Extended Agreement Term by sending a business check or wire

transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC at an address or account to be confirmed by Class Counsel before payment.

24. **Preliminary Approval, Objections, and Fairness Hearing.**

24.1. Promptly after execution of this Agreement, the Parties shall jointly request that the Court schedule a preliminary approval hearing within fourteen (14) days of the request or as soon thereafter as the Court may set the hearing and that the Court preliminarily approve the Agreement, preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to this Agreement, and approve the proposed form of Notice and plan for providing notice submitted by the Parties.

24.2. Named Plaintiffs shall ask the Court to schedule a fairness and final approval hearing for ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

24.3. Named Plaintiffs shall ask the Court to order the following procedures for objections: Any Settlement Class Member may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objection, to present objections orally at the Fairness Hearing. Responses by Named Plaintiffs to any timely-filed objections shall be made no less than five (5) days before the Fairness Hearing.

25. **Notice.** As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Charles Tyrwhitt shall at its expense:

25.1. Cause a stipulated class action settlement notice to be published on a search-engine-optimized ("SEO") settlement website operated by a stipulated class action settlement administrator or similar entity.

25.2. Add invisible anchor text in the header of the Website's homepage which reads, "Click to view our ADA Class Action Settlement Notice" and which links to the stipulated class action settlement notice published by the stipulated class action settlement administrator or similar entity.

25.3. Post a link to the stipulated class action settlement notice on its social media accounts, including https://www.facebook.com/CharlesTyrwhitt,

https://www.instagram.com/charlestyrwhitt/, and https://twitter.com/ctshirts, which post shall also tag and direct questions about the class action settlement notice to Class Counsel at its accounts on each respective platform.

25.4.   Charles Tyrwhitt shall also request that National Federation of the Blind and American Council of the Blind publish a link to the stipulated class action settlement notice in their respective electronic newsletters so notice is sent out within sixty (60) days of the Preliminary Approval.

26.   **Judgment, Final Approval, and Dismissal.**

26.1.   Class Counsel and Named Plaintiffs shall request that the Court enter a Final Judgment and Order granting Final Approval of this Agreement and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the Final Judgment and Order shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, in order to enforce this Agreement.

26.2.   This Lawsuit shall be dismissed with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, no later than thirty (30) days following the expiration of the Agreement Term or, if applicable, the First Extended Agreement Term or Second Extended Agreement Term.

27.   **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by Charles Tyrwhitt, direct or indirect, express or implied, that the Website is in any way inaccessible or that Charles Tyrwhitt has violated the ADA, or any other federal, state, or local law, code, regulation, order, or rule. Nothing in this Agreement shall operate as an admission by Charles Tyrwhitt in any context other than within the settlement of this Lawsuit that any particular standard or standards are applicable under the ADA or any other federal or state law to the Website.

28.   **Terms Not Confidential; Non-Disparagement.**

28.1.   The terms of this Agreement are not confidential and will be publicly filed into the Court record of the Lawsuit.

28.2.   Aside from the publication set forth in Section 25, the Parties and their respective counsel, agents, and representatives agree not to cause this Agreement or any other facts of this case to be in any way presented to the press, other media outlets or legal journals. The Parties and their respective

counsel, agents, and representatives further agree not to make any disparaging remarks about the other Party relating to this Agreement, the negotiations leading up to it, or that are inconsistent with Defendant's proactive, diligent, and good-faith efforts to ensure all customers have full and equal access to its online store. Nothing in this Agreement shall be construed to prohibit the Parties from responding to unsolicited press inquiries consistent with the terms herein. If any Party receives an unsolicited press or similar inquiry, it is required to consult with the other Party prior to submitting a response.

29.     **Release**. Effective on the date of Final Approval, the Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharge the Charles Tyrwhitt Parties from the Released Injunctive Claims. Pursuant to this release, Named Plaintiffs and Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term. Notwithstanding this release, Named Plaintiffs and Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term.

30.     **Entire Agreement.** This Agreement contains all the agreements, conditions, promises and covenants among Charles Tyrwhitt, Named Plaintiffs, Class Counsel, the Settlement Class regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

31.     **Modification.** Prior to Final Approval, this Agreement can only be amended by written agreement of the Parties hereto. Following Final Approval, no modification of this Agreement shall be effective unless it is pursuant to Court Order.

32.     **Severability.** If any provision or any part of this Agreement thereof shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

33.     **Drafting of this Agreement**. This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

34.     **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of same, and all duplicate counterparts will be construed together and constitute one Agreement. The Parties will be bound by signatures on this document which are

transmitted by mail, hand delivery, facsimile, email or any other electronic means to the other Party or, if applicable, counsel of record for the other Party. Such signature will have the same binding effect as any original signature. A typed electronic signature will have the same effect as a handwritten signature.

35. **Continuing Jurisdiction.** The Parties agree that the United States District Court for the Western District of Pennsylvania shall have continuing jurisdiction throughout the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, to interpret and enforce this Agreement.

36. **Deadlines.** The Parties and the Court recognize that from time to time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives no matter how well intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Parties that it anticipates a delay, the reasons for the delay and a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

37. **Communications to Named Plaintiffs, Class Counsel, the Settlement Class, and Charles Tyrwhitt.** All letters, notices, IRS Form 1099s, requests, demands and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail, facsimile and/or next-day express delivery service and addressed as follows:

    37.1.   To Named Plaintiffs, Class Counsel, or the Settlement Class:

        Kevin. W. Tucker (He/Him/His)
        Kevin Abramowicz
        EAST END TRIAL GROUP LLC
        186 42nd St., P.O. Box 40127
        Pittsburgh, PA 15201
        ktucker@eastendtrialgroup.com
        kabramowicz@eastendtrialgroup.com
        Tel. (412) 877-5220

        Lawrence H. Fisher

One Oxford Centre
301 Grant Street, Suite 4300
Pittsburgh, PA 15219
lawfirst@lawrencefisher.com
Tel. (412) 577-4040

37.2.   To Charles Tyrwhitt:

Steven D. Hurd
Margaret Swetman
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
shurd@proskauer.com
mswetman@proskauer.com
Tel. (212) 969-3985
Fax (212) 969-2900

Charles Tyrwhitt may change the individuals to whom notices and communications required by this Agreement shall be sent by providing Class Counsel and Named Plaintiffs with written notification that it wishes to do so.

*Signature block begins on the next page.*

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**ANTHONY HAMMOND MURPHY**

DATED: _____          By: _____

**BLAIR DOUGLASS**

DATED: Jul 22, 2020          By: *Blair Douglass*

**CHARLES TYRWHITT, INC.**

DATED: _____          By: _____

**ALAN MARTIN**

Its: **Chief Financial Officer**

## APPROVED AS TO FORM AND CONTENT:

EAST END TRIAL GROUP, LLC          PROSKAUER ROSE LLP

By: *Kevin W. Tucker*          By: _____

Kevin W. Tucker (He/Him/His)          Steven D. Hurd

Kevin Abramowicz          Margaret Swetman

22 of 23

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**ANTHONY HAMMOND MURPHY**

DATED:  7.20.2020      By:  _____

**BLAIR DOUGLASS**

DATED:  _____      By:  _____

**CHARLES TYRWHITT, INC.**

DATED:  _____      By:  _____

ALAN MARTIN

Its:  Chief Financial Officer

**APPROVED AS TO FORM AND CONTENT:**

EAST END TRIAL GROUP, LLC          PROSKAUER ROSE LLP

By:  _____          By:  _____

    Kevin W. Tucker (He/Him/His)          Steven D. Hurd

    Kevin Abramowicz          Margaret Swetman

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**ANTHONY HAMMOND MURPHY**

DATED: _____    By: _____

**BLAIR DOUGLASS**

DATED: _____    By: _____

**CHARLES TYRWHITT, INC.**

DATED: 22 July 2020    By: _____
ALAN MARTIN
Its:   Chief Financial Officer

**APPROVED AS TO FORM AND CONTENT:**

EAST END TRIAL GROUP, LLC          PROSKAUER ROSE LLP

By: _____    By: _____
    Kevin W. Tucker (He/Him/His)        Steven D. Hurd
    Kevin Abramowicz                    Margaret Swetman

22 of 23

186 42nd St., P.O. Box 40127              Eleven Times Square
Pittsburgh, PA 15201                      New York, NY 10036-8299

Lawrence H. Fisher                        Counsel for Charles Tyrwhitt, Inc.
One Oxford Centre
301 Grant Street, Suite 4300
Pittsburgh, PA 15219

Counsel for Named Plaintiffs
and the Settlement Class

# Charles Tyrwhitt Inc. - Proposed Settlement Agreement - Executed

**Final Audit Report** 2020-07-22

| | |
|---|---|
| Created: | 2020-07-22 |
| By: | Kevin Tucker (ktucker@eastendtrialgroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMqZHuXrlUwSLGmHnOfmpDiA7UCzXO5Ce |

## "Charles Tyrwhitt Inc. - Proposed Settlement Agreement - Execu ted" History

🗐 Document created by Kevin Tucker (ktucker@eastendtrialgroup.com)
2020-07-22 - 2:55:37 PM GMT- IP address: 108.39.234.114

📨 Document emailed to Blair Douglass ▮▮▮▮▮ @aol.com) for signature
2020-07-22 - 2:56:45 PM GMT

🗐 Email viewed by Blair Douglass ▮▮▮▮▮ @aol.com)
2020-07-22 - 4:03:40 PM GMT- IP address: 209.73.183.67

✒ Document e-signed by Blair Douglass ▮▮▮▮▮ @aol.com)
Signature Date: 2020-07-22 - 4:04:17 PM GMT - Time Source: server- IP address: 100.6.123.38

✅ Signed document emailed to Kevin Tucker (ktucker@eastendtrialgroup.com) and Blair Douglass ▮▮▮▮▮ @aol.com)
2020-07-22 - 4:04:17 PM GMT

Adobe Sign